REGAN, Judge.
Plaintiff, Peter Fitzgerald, instituted this suit to be reinstated as a New Orleans-Baton Rouge Steamship pilot, alleging that his Commission had been wrongfully revoked by Governor Jimmie H. Davis on December 12, 1960, after the Board of Commissioners of the New Orleans-Baton Rouge Steamship Pilots Commission had illegally recommended the revocation thereof without affording him a hearing, contrary to the statutory law of this state. In addition thereto, he prayed for a money judgment in the amount of $1,700.00 per month from the date of his dismissal until the rendition of a judgment ordering his reinstatement.
The defendants cited herein were Jimmie H. Davis, individually, and as governor of the State of Louisiana; Joseph A. Lennox, Jr., Ruel Reichert, Jr., and Charles H. Hough, individually, and as president of the New Orleans-Baton Rouge Steamship Pilots Commissioners and as members of the New Orleans-Baton Rouge Steamship Pilots Association; S. K. Sprada, individually, and as President of the New Orleans-Baton Rouge Steamship Pilots Association and the association itself.
All of the foregoing defendants, but the Governor, pleaded the exceptions of no right or cause of action, asserting that the plaintiff’s only remedy was a review of the Governor’s action so as to determine whether he acted arbitrarily or capriciously.
The defendants then answered and explained therein that the plaintiff’s commission as a river pilot was revoked because he was involved in numerous accidents as a pilot, and he was afforded a full hearing to disprove his alleged incompetency before the board recommended his dismissal.
From a judgment dismissing plaintiff’s suit, he has prosecuted this appeal.
The record reveals that the plaintiff was issued a commission as a New Orleans-Baton Rouge Steamship Pilot by Governor Earl K. Long on October 30, 1956. The certificate made him eligible for membership in the New Orleans-Baton Rouge Steamship Pilots Association, a private organization to which all river pilots commissioned to operate ships in the Mississippi River between Baton Rouge and New Orleans belong. Each member thereof is issued' a certificate of stock, entitling him to participate monthly in a proportionate share of the earnings of the association.
To reiterate, plaintiff received his commission on October 30, 1956, and between that date and December 8, 1960, a period of approximately four years, plaintiff, in the course of piloting various ships, became involved in fourteen marine accidents, which included collisions with other ships, with the Baton Rouge dock, and the grounding of several vessels.
In view of his record, the Standard Oil Company informed the association that under no circumstances would it permit the plaintiff to act as a pilot aboard one of its ships.
The monetary damages caused by the accidents referred to hereinabove, in which, *347 the plaintiff was involved, exceeded $250,-000.00, and by the fall of 1960, the pilots’ association and the Commission became alarmed relative to the plaintiff’s ability to act in the capacity of a pilot.
The association of pilots is a private group. However, the commission was created in conformity with the provisions of LSA-R.S. 34:1042 which authorizes the governor to “ * * * appoint, by and with the advice and consent of the senate, three citizens who shall form the Board of New Orleans and Baton Rouge Steamship Pilot Commissioners.”
One of the obligations of the Commission is set forth in LSA-R.S. 34:1049, which provides in part:
“The board of commissioners shall report immediately to the governor all cases of incompetency, or carelessness, especially charges of incompetency or carelessness in connection with damages caused to or by the ship of which the pilot had charge, as well as all cases of neglect of duty, habitual drunkenness and gross violations of its rules. The governor shall, thereupon, refer the same for investigation to the board of commissioners, the members of which shall sit as investigators and report their findings to the governor, recommending, if justified, a penalty. Whereupon, the governor may remove, suspend, or reprimand in his discretion.”
In the fall of 1960, the Board of Commissioners was then composed of Captain Charles Hough, Captain Joseph A. Lennox, Jr., and Captain Ruel Reichert, Jr.
In view of the Commission’s growing concern resulting from the plaintiff’s accident prone record, Captain Lennox met with the attorney general in October of 1960 to discuss the case, and he was referred to Mr. Ware, the executive counsel to the Governor. Thereafter, Ware informed him that the Governor wanted Lennox to conduct a more complete investigation.
On October 3, 1960, Captain Lennox addressed the following letter to the plaintiff:
“It has come to the attention of the New Orleans and Baton Rouge Steamship Pilots Commissioners, that while acting in your official capacity as a pilot of the New Orleans and Baton Rouge Steamship Pilots Association, the ships SS Producer, and the SS Sigvick were involved in accidents on September 13, 1960 and September 25, 1960, respectively. In said accidents there was considerable damage to the ships involved, and in one accident to the dock of the Port of Baton Rouge.
“Under the circumstances, this Commission feels that it has the obligation and duty to investigate the facts and circumstances surrounding the said accidents, and make such recommendations as it in its judgment deems advisable and proper, all in accordance with Louisiana Revised Statutes 34:1049.

“You are hereby notified that this Commission will hold a hearing on Tuesday, October 18, I960, at 3 o’clock P.M. at 929 National Bank of Commerce Building, at which time you will be given an opportunity to present all the facts pertinent to the occurrence of said accident.

“The investigation and hearing will include all matters including previous accidents insofar as they might touch upon your competency as a pilot.

“You may, if you so desire, be represented by a counsel of your own choice at said hearing.” (Emphasis ours.)
Plaintiff appeared at this meeting together with his attorney, Donald Lindquist, at which time all of the Commissioners were present. The negligence attributed to the *348 plaintiff, which involved five maritime accidents, was discussed on this occasion, and finally written questions were propounded to him directed to one particular accident. Plaintiff was also informed that Standard Oil of New Jersey told the association that it did not want him to act as a pilot on any of its ships.
A second meeting was convened on November 8th, at which time the plaintiff submitted his answers to the written interrogatories. With reference to Standard’s objections to the plaintiff’s ability as a pilot, Lindquist informed the Commissioners that he had endeavored to influence the Standard officials to change their decision to eliminate the plaintiff as a pilot of their ships, but his efforts proved to be unsuccessful.
A third meeting was convened on November 15, 1960, and at the conclusion thereof, the Commissioners stated that a report would be sent to the Governor’s office, and if he felt one was warranted, he might order the calling of a formal hearing at which time the plaintiff would be afforded an additional opportunity to present evidence on his own behalf. Relative to the complaints of Standard, it was agreed that the members of the association would meet to make a concerted effort to reach a solution of this problem.
On December 7, 1960, plaintiff was involved in another marine accident, and the Commissioners, who were members of the association, feared that they would ultimately be charged with criminal negligence if they should persist in permitting the plaintiff to pilot vessels as an agent of the association.
On December 8, 1960, the Commissioners directed a letter to the Governor in which they recommended that the plaintiff’s commission be revoked. In the letter, five of his accidents were described with the specific finding that each resulted from lack of judgment and skill on his part. They further stated that other accidents had occurred, but they believe that it was unnecessary to describe them in detail in view of the fact that five maritime accidents were ample and sufficient evidence to support the Commission’s finding that the plaintiff was completely incompetent.
On December 12, 1960, Governor Davis issued an executive order revoking plaintiff’s license “ * * * in accordance with the recommendation contained in the report submitted to me by the Board of New Orleans and Baton Rouge Steamship Pilots Commissioners, * *
On December 14th, Captain Lennox addressed a letter to the plaintiff, through his attorney, advising him that his commission as a pilot had been revoked; therefore, he was no longer eligible for membership in the pilots association.
Plaintiff initially seeks to have the revocation declared invalid, predicated on the hypothesis that the commissioners did not comply with the procedural requisites set forth in LSA-R.S. 34:1049 before recommending his dismissal. Before the Governor may remove, suspend, or reprimand a commissioned pilot, there are three procedural steps prescribed by the act. First, the commissioners are required to report any incident of incompetency to the Governor, who, in turn, refers the matter for investigation back to the board of commissioners. Second, the board must “sit as investigators” and report their findings to the Governor and recommend an appropriate penalty. Finally, the Governor in his discretion may take any action which he considers to be warranted by the findings of the Commissioners.
The record reveals that the Commissioners did act in conformity with the requirements of the statute. First, Captain Lennox reported plaintiff’s accidents to the Govern-nor and was directed by Mr. Ware, the Governor’s executive counsel, to conduct an investigation. Thereafter, the Commission *349 ers held a series of hearings where the plaintiff appeared with counsel to discuss the charges of incompetence which were pending against him. Finally, a written report was submitted by the Commissioners, who, acting as a fact finding body, concluded that five specific accidents were caused due to plaintiff’s lack of skill and poor judgment as a pilot.
Plaintiff contends that the hearings held by the Commission were informal because no record was kept of the meetings. In addition thereto, he contends that he was not permitted to adduce testimony to refute the charges of negligence. Counsel points out that after the meeting of November ISth he was led to believe that a formal hearing would be held if the Governor directed this course of action. Plaintiff insists that he wished to call a witness from Baton Rouge to testify on his behalf relative to the dock collision incident. However, he did not name any other witnesses which he would have called in connection with any of the other collisions or marine accidents.
It is his position that the Commission must hold a formal hearing before submitting findings of fact to the Governor and recommending disciplinary action. Counsel relies on the following language of the statute to support his contention: “ * * * The governor shall, thereupon, refer the same for investigation to the board of commissioners, the members of which shall sit as investigators and report their findings to the governor, * * (Emphasis ours.)
Plaintiff’s counsel argues that to “sit as investigators” carries with it the significant implication that the Commission must sit as a court and conduct a hearing, at which the accused pilot is present and is permitted to refute the evidence against him.
We find no merit in the foregoing contention. It is our opinion that the Commission afforded plaintiff every conceivable opportunity to explain his position with respect to the accidents. It is true that no record was made of any of the meetings; however, we are of the opinion that the rationale of the statute does not impose such an onerous obligation upon the Commissioners. We believe that the phrase “sit as investigators” invested in the Commission the power to act merely as an investigating body and thereafter report its findings to the Governor. Although the plaintiff may have been promised a further hearing, if necessary, the fact that he did not obtain one, which would have served no useful purpose, did not violate either the intent or the spirit of the existing law.
The Commissioners testified that they wished to delay plaintiff’s dismissal until after the Christmas holidays, but his last accident posed the very serious threat that the association would be charged with criminal negligence if he was permitted to continue as an active pilot, and possibly cause loss of life and property as a result of his obvious incompetence.
The record reveals that the Commissioners had conducted lengthy investigations of the plaintiff through November IS, 1960, and at the conclusion thereof they would have been warranted in reporting their respective opinions concerning the plaintiff’s lack of skill or ability as a pilot to the Governor, and recommending forthwith his dismissal.
Plaintiff, however, insists that in construing LSA-R.S. 34:1049, to the effect that it does not require the Commissioners to hold a formal hearing, creates an unconstitutional interpretation thereof in that it deprives the plaintiff of due process of law.
We are of the opinion that this argument is fallacious for the reason that the plaintiff was accorded a privilege when he was issued a pilot’s commission by the Governor. Thus, we are not judicially confronted with an inalienable right possessed *350 by the plaintiff, but with a privilege granted to him by a sovereign state, which in the ■exercise of its police power, may withdraw it.
The statutory law referred to here-inabove, permits the Governor to grant a pilot’s commission and, if necessary, to revoke it. The only limitation placed upon the Governor’s power to withdraw such a ■commission is that the pilot must be removed for a cause as is delineated in LSA-R.S. 34:1049 or LSA-R.S. 34:1050. The ■procedural requisites set forth therein sim-ply impose upon the Board of Commission•ers the obligation of investigating, among •other things, any acts of incompetence, and to make a comprehensive report thereof to the Governor. The record compels us to conclude that the law relating to the facts 'hereof has been fully complied with by the Board of Commissioners and by the Gov•ernor.
For the reasons assigned, the judgment ■appealed from is affirmed.
Affirmed.